IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

NICHOLAS B. GANNON                                                                                      PLAINTIFF

V.                                                      NO. 14-3029

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                         DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff, Nicholas B. Gannon, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

### **I.   Procedural Background:**

Plaintiff filed his current application for DIB on October 6, 2011, alleging an inability to work since July 1, 2011, due to three herniated disks, inner ear damage, stress, anxiety, and depression. (Tr. 182-188, 211, 215). An administrative hearing was held on January 9, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 33-88).

By written decision dated March 28, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – hypertension, vertigo, degenerative disk disease of the lumbar spine, and depression. (Tr. 15). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the

Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except that he cannot perform work that involves heights or dangerous machinery. In addition, he can only do work with simple tasks and simple instructions.

(Tr. 17). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff was unable to perform any past relevant work, but that there were other jobs Plaintiff would be able to perform, such as Cashier II; poultry production worker; and fast food worker. (Tr. 24-25).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional information and denied that request on February 10, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards

v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able

3

to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.   Discussion:**

Plaintiff raises the following issue in this matter – Whether the ALJ erred in failing to find Plaintiff's shoulder impairment was severe. (Doc. 11).

**A.  Severe Impairment:**

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

Plaintiff contends that there was "absolutely no mention of this man's chronic left shoulder problem in the formulation of RFC at steps four and five." (Doc. 11 at p. 8). In fact, a review of the ALJ's decision reveals the contrary. In his decision, the ALJ reported:

> The claimant saw Merwin Moore, MD for his shoulder pain and asked about having surgery done, but he did not want the surgery until the school year was done because he was a bus driver (exhibit 13F). That also shows that his complaints of pain are not as limiting as alleged.

4

> . . .
>
> Dr. White treated the claimant for forearm pain and shoulder pain that was made worse by activity[,] movement and lifting (exhibits 9F, 18F and 26F). His shoulder pain was described as mild to moderate in severity (exhibits 9F, 18F and 26F). He still had full range of motion in his shoulder (exhibit 18F). Dr. White, though, did not recommend any specific limitations on his activities due to that pain, which indicates that the claimant is not as limited as alleged. That also shows that the claimant does not have any greater limitations than those in the residual functional capacity.

(Tr. 20). Clearly, the ALJ addressed Plaintiff's shoulder pain in his decision.

Plaintiff also argues that the ALJ failed to evaluate the question of severity of Plaintiff's impairments with consideration of all of them in combination. However, in his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" (Tr. 13). He also stated that an impairment or combination of impairments is "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Tr. 13). The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings. (Tr. 13). The ALJ concluded that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled the severity of one of the listed impairments. (Tr. 15). This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

5

In addition to the above, it is noteworthy that Plaintiff did not allege any shoulder problems in his October 6, 2011 Disability Report, which is significant. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001).

A further review of the record regarding Plaintiff's allegations of shoulder pain reveals the following.

On October 7, 2011, Plaintiff presented himself to Dr. Edward L. White, his treating physician, complaining of shoulder pain, stating that it had been going on for four weeks. (Tr. 430). Dr. White found his range of motion was normal, no joint crepitus present, and no pain with joint motion. (Tr. 431). In his first Function Report dated October 10, 2011, Plaintiff did not mention shoulder pain. (Tr. 232-236). On November 28, 2011, Plaintiff presented himself to Dr. White, complaining of shoulder pain. (Tr. 489). He was found to be tender over the deltoid area and infraspinatous muscles, but had "essentially full ROM with strength and vascular fill normal." (Tr. 490). Dr. White reported that he was able to produce increased pain in the biceps area with loading the arm, and assessed Plaintiff with synovitis/tenosynovitis. (Tr. 490). Plaintiff again complained to Dr. White of shoulder pain on December 21, 2011, and his shoulder was injected over the bursae area. (Tr. 492). On January 3, 2012, Plaintiff complained to Dr. White that his shoulder pain was not any better, and on January 5, 2012, an MRI of Plaintiff's upper extremity was conducted. (Tr. 497). The impression was as follows:

1. Abnormal signal involving the superior labrum and some mild impingement of the rotator cuff secondary to bony spurs on the inferior aspect of the acromioclavicular (AC) joint, with mild rotator cuff tendinosis but no tear of the rotator cuff appreciated. The rotator cuff is thinned, and I suspect there has been chronic impingement on the cuff with degenerative change and tendinosis, but I do not see a definite linear tear in the cuff.

      2.  The glenohumeral joint reveals intact cartilage.
      3.  I do not see subchondral degenerative changes at this time.

(Tr. 497). On January 19, 2012, Plaintiff was seen by Dr. Mervin Moore for his left shoulder pain. (Tr. 458). Dr. Moore reported that three views of the left shoulder showed no arthritic change or dislocation, and the radiographs of the left shoulder were normal. (Tr. 459). He further reported that the MRI showed moderate subacromial inflammation, no obvious rotator cuff tear, and there were some minor changes in anterior and inferior labrum. (tr. 459). Dr. Moore reported that he talked with Plaintiff at length about his options, and that at that point, they were going to simply repeat his injection. (Tr. 459). Dr. Moore gave the impression as "probable subacromial bursitis." (Tr. 459).

    In a General Physical Examination performed by Dr. Shannon Brownfield on February 1, 2012, it was reported that Plaintiff's range of motion of extremities were all normal except his lumbar spine, which was 0-60 degrees rather than the normal of 0-90 degrees. (Tr. 462). Dr. Brownfield reported that all limb functions were normal, and diagnosed Plaintiff with lower back pain with history of herniated discs x 3; cervicalgia, and depression. (Tr. 463). Dr. Brownfield found that Plaintiff had moderate/severe limitation in prolonged position/stoop/bend; and severe limitations in lifting. (Tr. 464). In a Physical RFC Assessment completed by non-examining consultant, Dr. Charles Friedman, he found that Plaintiff would be able to perform light work with certain limitations. (Tr. 478-485).

    On February 20, 2012, David Fulghum, NP, at Baxter Regional Medical Center, Outpatient – Orthopedic – reported that Plaintiff could not raise his left shoulder above 90 degrees and could not externally rotate it without severe pain. (Tr. 457). He had minimal pain to palpation. (Tr. 457).

7

Although Plaintiff reported left shoulder pain in his May 3, 2012 Disability Report – Appeal (Tr. 242), there is no mention of shoulder pain in his May 25, 2012 Function Report – Adult. (Tr. 250-257).

In a June 1, 2012 Physical RFC Assessment completed by non-examining consultant, Dr. Steven Strode, Dr. Strode opined that Plaintiff could perform light work, but was limited in overhead reaching by the left arm to occasional, due to left shoulder tendinosis. (Tr. 519).

In a June 19, 2012 Disability Report – Appeal, Plaintiff reported that he was unable to lift his shoulder to clothe properly. (Tr. 263).

When Plaintiff was examined on September 18, 2012, by Dr. White, all of Plaintiff's upper extremities were reported as having normal strength, normal tone and muscle bulk. (Tr. 551).

In a questionnaire Plaintiff completed on January 4, 2013, which was provided by his attorney, Plaintiff indicated that he had no problems with his hands and could reach above his head, and could push and pull things until the point it affected his back. (Tr. 286). He also did not include shoulder pain as a problem that made him unable to work. (Tr. 268).

In an August 12, 2013 examination by Dr. White, performed after the ALJ's decision, which was considered by the Appeals Council, Plaintiff denied any additional symptoms aside from his anxiety and depression, and Dr. White reported that Plaintiff felt he was able to provide care for himself. (Tr. 931). Plaintiff reported that he hurt all over, and was assessed by Dr. White with anxiety disorder, generalized; mild depression; and fatigue. (Tr. 932).

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court finds that Plaintiff has failed to meet his burden of establishing his alleged shoulder pain was a severe impairment, and that there is substantial evidence to support the ALJ's findings with respect to severe impairments.

### B.  RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

9

The Court finds there is substantial evidence to support the ALJ's RFC determination as well as the weight he gave to the various opinions of the physicians.

### C. Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, the ALJ considered all of the relevant factors in analyzing Plaintiff's credibility, and pointed out several inconsistencies in Plaintiff's allegations as well as some of the physician's opinions. Accordingly, the Court finds there is substantial evidence to support the ALJ's credibility analysis.

### D. Hypothetical Question:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the

Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing such jobs as Cashier II; poultry production worker and fast food worker.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### IV.     Conclusion:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 17th day of June, 2015.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE